UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARK W. GANTT,

                              Plaintiff,

                                                                                              9:10-CV-0083
v.                                                                                     (GTS/TWD)

WILLIAM LAPE and GARY MIELENZ,

                              Defendants.
_____

APPEARANCES:                                                     OF COUNSEL:

MARK W. GANTT, 08-A-3883
Coxsackie Correctional Facility
Box 999
Coxsackie, NY 12051

HON. ERIC T. SCHNEIDERMAN                    LAURA A. SPRAGUE, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION

       This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Currently pending before the Court are Plaintiff's motion for a temporary restraining order (Dkt. No. 44) and Defendant Gary Mielenz's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (Dkt. No. 31). For the reasons that follow, I recommend that the Court deny Plaintiff's motion for a temporary restraining order and grant Defendant's motion for summary

judgment.

I.  **BACKGROUND**

The complaint alleges that on September 8, 2009, Plaintiff Mark W. Gantt filed a grievance because the commissary charged him $10.49 for an item he had not purchased. (Dkt. No. 1 at 4.[1]) Thereafter, Defendant Gary Mielenz, a commissary clerk, came to Plaintiff's cell and screamed at Plaintiff that Plaintiff "did make [t]he purch[ase] and [t]hat [h]e was [g]oing [t]o [t]ake the $10.49 and [Plaintiff] would never [g]o [t]o [the] commissary" again. *Id*. at 4-5.

Defendant Mielenz wrote a misbehavior report charging Plaintiff with lying. *Id*. at 5. A hearing was conducted on the misbehavior report. *Id*. The hearing officer "[r]ead [t]he [g]rievance at [t]he [t]ime of [t]he hear[]ing" and found Plaintiff guilty. *Id*. Plaintiff states that the grievance he filed was the only evidence the hearing officer considered. *Id*. The hearing officer imposed a penalty of thirty days' loss of commissary privileges and a $5.00 fine. *Id*.

Plaintiff filed the complaint in this action on January 22, 2010. (Dkt. No. 1.) The complaint named William Lape (the superintendent of Coxsackie Correctional Facility) and Mielenz as defendants. *Id*. at 1-2. The complaint did not name the hearing officer as a defendant.

Defendants answered on July 6, 2010. (Dkt. No. 11.) On that same date, Defendant Lape moved for judgment on the pleadings. (Dkt. No. 12.) Plaintiff opposed the motion. (Dkt. No. 14.) In addition, Plaintiff requested leave to amend his complaint to add the hearing officer as a defendant. (Dkt. No. 15.) Defendants opposed that request. (Dkt. No. 16.)

---

[1]  The page reference is to the page number assigned by the Court's electronic filing system.

On January 18, 2011, Magistrate Judge George H. Lowe[2] recommended that the Court grant Defendant Lape's motion for judgment on the pleadings. (Dkt. No. 25.) Judge Lowe denied Plaintiff's request to amend his complaint without prejudice to the filing of a procedurally proper motion. *Id*. The Court adopted the Report-Recommendation on February 17, 2011. (Dkt. No. 26.) Plaintiff did not move thereafter to amend his complaint.

Plaintiff has now moved for a temporary restraining order. (Dkt. No. 44.) Defendant Mielenz has opposed the motion. (Dkt. No. 45.) Plaintiff has filed reply affidavits. (Dkt. Nos. 46-48.) In addition, Defendant Mielenz moves for summary judgment. (Dkt. No. 31.) Plaintiff has opposed the motion. (Dkt. Nos. 33 and 40.)

## II.     MOTION FOR PRELIMINARY INJUNCTION

### A.     Governing Legal Standard

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit. *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir. 2010). To prevail on a motion for preliminary injunctive relief, a plaintiff must demonstrate irreparable harm and either a substantial likelihood of success on the merits of the claim, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *Citigroup*

---

[2]     Judge Lowe retired on February 9, 2012. This case was reassigned to me on February 10, 2012. (Dkt. No. 38.)

*Global Mkts., Inc.*, 598 F.3d at 35; *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011).  When, however, the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the standard is higher.  *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006), *amended on other grounds*, 480 F.3d 138 (2d Cir. 2007); *see also Jolly v. Coughlin,* 76 F.3d 468, 473 (2d Cir. 1996).  Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."  *Citigroup Global Mkts.*, 598 F.3d at 35 n.4 (internal quotation marks omitted).

"To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint."  *Lewis v. Johnston*, No. 08-CV-482 (TJM/ATB), U.S. Dist. LEXIS 32310, at * 6-7, 2010 WL 1268024, at * 3, 2010 (N.D.N.Y. Apr. 1, 2010) (internal quotation marks and citations omitted).[3]  "[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action."  *Omega World Travel, Inc. v. Trans World Airlines,* 111 F.3d 14, 16 (4th Cir. 1997); *accord Ball*

---

[3] *See e.g., Scarbrough v. Evans*, No. 09-CV-0850 (NAM/DEP), 2010 U.S. Dist. LEXIS 38990, at *6, 2010 WL 1608950, at * 2 (N.D.N.Y.  Apr. 20, 2010) (denying motion for preliminary injunction alleging use of excessive force and denial of medical care by non-parties where complaint alleged denial of mental health care and proper conditions of confinement); *Lewis*, 2010 U.S. Dist. LEXIS 32310, at * 6, 2010 WL 1268024, at * 3 (denying motion for injunctive relief based upon actions taken by staff at Great Meadow Correctional Facility in 2010, where the complaint alleged wrongdoing that occurred at Franklin and Upstate Correctional Facilities in 2006 and 2007); *McKinnon v. Tresman,* No. 3:02CV2305, 2004 U.S. Dist. LEXIS 428, at * 4, 2004 WL 78091, at * 1 (D. Conn. Jan. 9, 2004) (denying plaintiff's motion for preliminary injunction when the inmate's complaint alleged improper disclosure of confidential medical information and the motion concerned a possible prison transfer).

*v. Famiglio*, 396 Fed. App'x 836, 837 (3d Cir. 2010); *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994).  In addition, except in limited circumstances not relevant here, a court may not order injunctive relief as to non-parties to an action.  *See* Fed. R. Civ. P. 65(d) ("[e]very order granting an injunction . . . binds only . . . the parties . . . ."); *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988).

Under the Prison Litigation Reform Act, preliminary injunctive relief in any civil action with respect to prison conditions must be narrowly drawn, extend no further than necessary to correct the harm, and be the least intrusive means necessary to correct that harm.  *See* 18 U.S.C. § 3626(a)(2).  In considering an application for prospective relief, the court is required to give substantial weight to any adverse impact such relief may have on public safety or on the operation of the criminal justice system.  *See* 18 U.S.C. § 3626(a)(1)(A).

      B.      **Analysis of Plaintiff's Motion**

Plaintiff states that since his return to Coxsackie Correctional Facility in January 2012 he has been subjected to numerous acts of misconduct and wrongdoing by corrections staff in retaliation for his pending litigation.  (Dkt. No. 44 at 2-7.)[4]  Specifically, Plaintiff claims that he has been harassed and threatened with physical harm, numerous false misbehavior reports have been written against him, his property has been interfered with, and his requests for medical care and for religious meals and study have been denied.  *Id*.  Read liberally in the light most

---

[4] In late 2011, Plaintiff requested and was approved for an "area of preference transfer" within the Clinton Hub. (Dkt. No. 44 at 1.)  However, because the only facility in the Clinton Hub with a security level appropriate for Plaintiff housed an inmate who was a known enemy of Plaintiff, Plaintiff had to be sent outside of the Clinton Hub to either Coxsackie Correctional Facility or Eastern Correctional Facility. (Dkt. No. 45-4 at ¶ 9.)  Area of preference transfers are handled exclusively by the Office of Classification and Movement in Albany.  *Id*. ¶ 8.

favorable to Plaintiff, the motion seeks an order of this Court (I) transferring Plaintiff to a different correctional facility or (ii) restraining correctional staff at Coxsackie Correctional Facility from future acts of retaliation. *Id*.

Defendant opposes the motion. (Dkt. No. 45.) Defendant argues that Plaintiff's motion should be denied on the ground that it improperly seeks to restrain conduct by individuals who are not parties to this action. *Id*. at 4. Defendant also contends that the motion should be denied because Plaintiff has not made the showing required for this extraordinary relief. *Id*. at 5-8.

Plaintiff has filed a reply, as well as two "supplemental" submissions. (Dkt. Nos. 46-48.) Plaintiff maintains that the requested injunctive relief is necessary because corrections staff at Coxsackie Correctional Facility have continued to retaliate against him by issuing false misbehavior reports. (Dkt. Nos. 46-47.) Plaintiff also claims that several items of his personal property were improperly confiscated when he was transferred to the special housing unit on May 30, 2012. (Dkt. No. 48.) Significantly, however, Plaintiff does not claim that Defendant Mielenz had **any** involvement in these incidents, nor does he allege that Defendant exercises supervisory authority over the corrections staff at Coxsackie Correctional Facility. *Id*.

Based upon a review of the papers in the light most favorable to the *pro se* Plaintiff, I recommend that his motion for injunctive relief be denied. Plaintiff has not demonstrated any relationship between his retaliation claim against Defendant Mielenz and his claim that he has been subjected to ongoing acts of misconduct and retaliation by members of the corrections staff at Coxsackie Correctional Facility.[5] In other words, Plaintiff's motion for injunctive relief is not

---

[5] Plaintiff's conclusory assertions that staff work together and attend employee functions are patently insufficient to establish the required relationship between the harm alleged in the motion and the claims asserted in the complaint. *See* Dkt. No. 46 at 2, Dkt. No. 47 at 1.

intended to preserve the status quo and prevent irreparable harm until such time as this Court has the opportunity to address the merits of Plaintiff's claims against Defendant.  Rather, Plaintiff seeks relief based on assertions of misconduct that are (1) against non-parties to this action, and (2) unrelated to the claims asserted in his complaint.  No matter how meritorious these allegations might be, they do not afford a basis for the issuance of preliminary injunctive relief in this action.

In addition, Plaintiff's desire to be confined in a different correctional facility, no matter how sincere, is not sufficient to warrant the requested judicial relief.  It is well-established that DOCCS has "broad leeway in deciding where to house the inmates under its protective care, be it state or county jail."  *McFadden v. Solfaro*, Nos. 95 Civ. 1148 (LBS) and 95 Civ. 3790 (LBS), 1998 U.S. Dist. LEXIS 5765, at * 36, 1998 WL 199923, at * 10 (S.D.N.Y. Apr. 23, 1998); *see also Meachum v. Fano*, 427 U.S. 215, 229 (1976) ("The federal courts do not sit to supervise state prisons, the administration of which is [of] acute interest to the States.").  The law is clear that an inmate does not have a right to be confined to the prison of his own choosing or to a particular type of housing.  *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (inmates have no right to be confined in a particular state or particular prison within a given state); *Montanye v. Haymes*, 427 U.S. 236, 243 (1976) (New York state prisoners have no right to incarceration at a particular prison facility); *Klos v. Haskell*, 835 F. Supp. 710, 723 (W.D.N.Y. 1993), *aff'd*, 48 F.3d 81 (2d Cir. 1995) (citing cases).

For these reasons, it is recommended that Plaintiff's motion for injunctive relief (in any form) be denied.

**III.    MOTION FOR SUMMARY JUDGMENT**

Construed broadly, the complaint asserts (1) a retaliation cause of action against Defendant Mielenz for issuing the misbehavior report; and (2) a due process cause of action against Defendant Mielenz for overcharging Plaintiff $10.49 on his commissary bill. Defendant argues that he is entitled to summary judgment because (1) Plaintiff failed to exhaust his administrative remedies; and (2) the complaint fails to state a claim for retaliation or any violation of due process.[6] (Dkt. No. 31-3.) For the reasons discussed below, I recommend that the Court dismiss this action on the constitutional merits.

**A.    Legal Standard**

1.    Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material

---

[6]    Defendant also argues that he is entitled to qualified immunity. (Dkt. No. 31-3 at 13-16.) Because I find that his arguments on the constitutional merits are dispositive, I have not addressed Defendant's qualified immunity argument.

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[7] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

        2.      <u>Legal Standard Governing Motion to Dismiss</u>

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968) (citations omitted); *accord Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*,

---

[7] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994), *cert. denied*, 513 U.S. 836 (1994)(citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B.     Exhaustion of Administrative Remedies

Defendant argues that he is entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. (Dkt. No. 31-3 at 5-8.) I find that Plaintiff has, just barely, raised a triable issue of fact that Defendant is estopped from asserting the defense.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007). In New York state prisons, the Department of Corrections and Community Supervision ("DOCCS") has a well-established three-step inmate grievance program. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7 (2010).

Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a) (2010). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* at (b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, and issues a written decision within two working days of the conclusion of the hearing. *Id.* at (b)(2).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. If the grievance involves an

11

institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. *Id.* at (c).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. at (d).

Any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g) (2010). If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81 (2006).

Here, Plaintiff's claims against Defendant Mielenz involve two events: (1) the initial $10.49 commissary overcharge; and (2) the misbehavior report that Defendant Mielenz issued. Plaintiff did not exhaust his administrative remedies regarding either of these events. Regarding the overcharge, the record shows that Plaintiff wrote to the IGRC on September 8, 2009, complaining about his commissary records in general and the $10.49 commissary overcharge in particular. (Dkt. No. 31-5.) The grievance was not processed. No grievance number was assigned to it and no decision was ever reached. It does not appear on the list of grievances that Plaintiff filed at the facility. (Dkt. No. 31-6 at 5.) Although he could have appealed the IGRC's failure to act to the superintendent, Plaintiff admitted at his deposition that he "never did nothing to follow up on the grievance for them not filing or anything." (Dkt. No. 31-4 at 64:10-14.)

Moreover, it is undisputed that Plaintiff never filed a grievance regarding the misbehavior report that Defendant issued.  (Dkt. No. 31-6 at 5.)  Plaintiff never received a decision from CORC regarding either the overcharge or the misbehavior report.  ( Dkt. No. 31-7.)  Therefore, Plaintiff failed to exhaust his administrative remedies.

Plaintiff's failure to exhaust, however, does not end the inquiry.  The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies.  *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[8]  First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."  *Hemphill*, 380 F.3d at 686 (citation omitted).   Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."  *Id.* (citations omitted).  Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements."  *Id*. (citations and internal quotation marks omitted).

Here, as discussed above, administrative remedies were available to Plaintiff.  Defendants preserved the exhaustion defense by asserting it in their answer to the complaint.  (Dkt. No. 11 at

---

[8]   The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81.  *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011).

13

3 ¶ 7.) However, Plaintiff has raised a triable issue of fact that Defendant should be estopped from asserting the exhaustion defense. A prison official's refusal to accept or forward a prisoner's grievance is conduct that hinders a plaintiff's ability to pursue administrative remedies. *Sandlin v. Poole*, 575 F. Supp. 2d 484, 488 (W.D.N.Y. 2008); *Ziemba v. Wezner*, 366 F.3d 161, 162-63 (2d Cir. 2004)(district court directed to consider whether defendants were estopped from asserting exhaustion defense where inmate alleged that he was beaten, threatened, denied grievance forms, and transferred to another prison). Here, Plaintiff testified at his deposition that his grievance regarding the $10.49 commissary overcharge, rather than being properly filed and processed, "ended up in Mr. Mielenz' hand." (Dkt. No. 31-4 at 65:17-18.) It was not a copy of the grievance, but rather "the actual one because it looked like the same paper I used to write it on." *Id*. at 65:23-25. Thus, when Plaintiff attempted to properly file a grievance, Defendant came into possession of the document, came to Plaintiff's cell, and screamed at Plaintiff that Plaintiff "did make [t]he purch[ase] and [t]hat [h]e was [g]oing [t]o [t]ake the $10.49 and [Plaintiff] would never [g]o [t]o [the] commissary" again. (Dkt. No. 1 at 4-5.) This is not precisely the type of behavior that the *Sandlin* and *Ziemba* courts cited as estoppel. However, it is similar enough that I find that Plaintiff has, just barely, raised a triable issue of fact that Defendant is estopped from asserting the exhaustion defense. I will therefore address Plaintiff's claims on the merits.

    C.    **Retaliation**

Plaintiff claims that Defendant Mielenz retaliated against him for filing a grievance by issuing a misbehavior report. (Dkt. No. 1.) Defendant argues that the complaint does not state a retaliation claim because (1) Plaintiff has not alleged that Defendant took "adverse action"

against him; and (2) even if Defendant took adverse action, there is no causal connection between Plaintiff's filing of the grievance and Defendant's decision to issue the misbehavior report.

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Gill*, 389 F.3d at 381-383. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the

15

protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes,* 239 F.3d at 492).

Here, Defendant concedes that Plaintiff engaged in protected conduct by filing a grievance. (Dkt. No. 31-3 at 10.) The issue, then, is whether Defendant took adverse action against Plaintiff and, if he did, whether there was a causal connection between that action and Plaintiff's protected conduct.

The filing of misbehavior reports that result in a "temporary loss of various privileges such as permission to visit the commissary do not constitute adverse action because they are *de minimis*; they do not constitute penalties that would deter a similarly situated prisoner of ordinary firmness from exercising his constitutional rights." *Bartley v. Collins*, No. 95 Civ. 10161 (RJH), 2006 U.S. Dist. LEXIS 28285, at * 21, 2006 WL 1289256, at * 7 (S.D.N.Y. May 10, 2006); *Garcia v. Watts*, No. 08 Civ. 7778, 2009 U.S. Dist. LEXIS 85613, at * 7-8, 2009 WL 2981911, at *2 (S.D.N.Y. Sept. 15, 2009).[9] Here, Plaintiff was fined $5.00 and lost commissary privileges for thirty days as a result of Defendant's misbehavior report. (Dkt. No. 1 at 5.) This *de minimis* punishment does not constitute adverse action. Therefore, I recommend that the Court grant Defendant's motion and dismiss Plaintiff's retaliation claim.

### D. Due Process

Read broadly, the complaint asserts a procedural due process claim based on the $10.49 commissary overcharge. Defendant argues that this claim should be dismissed because New

---

[9] Defendant provided Plaintiff with copies of these unpublished decisions with his moving papers. (Dkt. No31-4 at 94-106.)

York provides an adequate post-deprivation remedy for the loss of property by inmates. (Dkt. No. 31-3.) Defendant is correct.

"[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer,* 468 U.S. 517, 533 (1984) (emphasis omitted). This Circuit has held that "confiscation . . . [does] not constitute a Fourteenth Amendment violation for loss of property because of the availability of state court post-deprivation remedies" in the New York Court of Claims. *Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir. 1996); *Jackson v. Burke,* 256 F.3d 93, 96 (2d Cir. 2001); *see also Parratt v. Taylor,* 451 U.S. 527, 544 (1981) ("Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process."), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). Therefore, I recommend that the Court dismiss Plaintiff's procedural due process claim regarding the $10.49 commissary overcharge.

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for a temporary restraining order (Dkt. No. 44) be **DENIED**; and it is further

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 31) be **GRANTED** and that the Court enter judgment in Defendant's favor.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the

Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: July 31, 2012
       Syracuse, New York

                                        Thérèse Wiley Dancks
                                        United States Magistrate Judge